SHAWN N. ANDERSON
United States Attorney
DEVARUP RASTOGI
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7334

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 24-00017 |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| RICHARD JAY AIS SOLANG, | |
| Defendant. | |

COMES NOW, the United States of America ("Government"), by and through the undersigned Assistant U.S. Attorney Devarup Rastogi, and hereby files this Sentencing Memorandum. The Government recommends that the Court impose a sentence of one hundred and twenty (120) months imprisonment, followed by five years of supervised release for the offense of Attempted Enticement of a Minor.

**I.  STATEMENT OF FACTS**

On October 8, 2024, Defendant RICHARD JAY AIS SOLANG ("Defendant") entered a plea of guilty to an Indictment charging attempted enticement of a minor in violation of 18 U.S.C. § 2422(b). (ECF No. 25)

In May 2024, the United States Air Force Office of Special Investigations ("AFOSI") Detachment 602, Andersen Air Force Base ("AAFB") with assistance from Homeland Security

U.S. Sentencing Memorandum - 1

Investigations ("HSI") began conducting an online undercover operation designed to identify and target adult individuals with ties to the military, including base access, who were seeking to contact and engage in illegal sexual activity with minor children.

On May 2, 2024, Special Agent ("SA") James Holt, USAF Lt. Colonel, with OSI Detachment 602, activated an undercover ("UC") profile, George, on the gay dating/hookup application Grindr. The profile was of a male, 39 years old, using a profile picture of a young teenage looking white male. However, once online the persona portrayed by SA Holt was that George was of a 13-year-old male dependent living on Andersen Air Force Base.

At approximately 7:09 p.m., a Grindr user with the screen name AAFB Throater 99 ("AT99") initiated contact with George, the undercover persona of SA Holt. AT99 was believed to have a military connection based upon the screen name as "AAFB" is an acronym for Andersen Air Force Base. AT99 texted, "Let me throat that D sometime man," which indicated he wanted to perform fellatio on George. The UC indicated he had just moved here and AT99 indicated, "Im sure ull enjoy it here, I know ur cock will lol." The UC stated that "this app keeps crashing wanna text." AT99 agreed and after the UC provided a phone number AT99 asked whether the UC wanted to use WhatsApp or Signal, with the UC stating Signal. Both WhatsApp and Signal are messaging applications allowing private, encrypted communication.

Once the conversation moved over to Signal, AT99's profile displayed "J jr". The text communication continued. The UC indicated that he "just got here with my moms." AT99 did not follow up at that time as he stated, "just tryna throat lol."

On May 9, 2024, at approximately 9:28 a.m., AT99 initiated contact with UC via the Signal application. During the initial text exchange, AT99 asked the UC what he was doing, and the UC responded and introduced his age as thirteen. The text exchange went as follows:

    UC:    Just moved here. Finishing up the rest of the year virtual so
                Idont have any friends yet. So yeah basically boooooored

U.S. Sentencing Memorandum - 2

| | | |
|---|---|---|
| 1 | | out of my mind. (crying and sad emoji) |
| 2 | AT99: | I should come throat that dick on ur next 5 minute virtual break |
| 3 | | |
| 4 | UC: | I don't want to make you mad, but I might be to young 4 u (single tear crying emoji) |
| 5 | UC: | Just don't want to wast your time |
| 6 | UC: | I'll be 14 in July though lol |
| 7 | UC: | #ageisjustanumber (three laughing emoji) |
| 8 | AT99: | Oh..ur on an adult app lol |
| 9 | UC: | (replied to the text with surprise face emoji) |
| 10 | AT99: | (replied to the message #ageisjustanumber) Facts |
| 11 | AT99: | As long u not the type to go telling everyone n they mamas |
| 12 | AT99: | And ur just looking for good head |

AT99 asked if the UC was alone, which the UC confirmed. AT99 "wanted to see if u lookin to get throat lol." The UC stated "maybe" and asked if AT99 was "on Base," to which AT99 replied he was. AT99 asked when the UC's parents got home, and the UC said, "not until at least 7." About two and a half hours later, at 3:11 p.m., UC sent AT99 a message that he was done for the day. AT99 said he was just out in town, and he met up with "a dude" in a restroom that he met on Grindr. AT99 claimed "the dude said he was 15 and that the dude said he was sorry, but he really needed head."

AT99 asked the last time the UC "got head." The UC responded, "a few months ago in Hawaii from a dude from Grindr." AT99 asked if "he do good?" The UC responded that "I've had better lol."

AT99 texted "I want to try" and after being asked when, AT99 said "Asap." When asked what he wanted to do, AT99 said he wanted to "just taste u for now." When the UC asked if he

U.S. Sentencing Memorandum - 3

was going to do anything, AT99 responded "maybe coat my throat?" The UC texted "I'm sold."

AT99 indicated he was waiting on the UC to say when and where. The UC stated he was living by the closed Burger King ("BK") and was ready when AT99 was. AT99 said he was stuck in traffic. The UC told AT99 "K you don't have to come if you don't want too." AT99 responded "I really want to taste you bro."

AT99 and the UC continued to communicate as AT99 navigated through traffic giving updates on anticipated arrival time. Once AT99 got to the line at the gate to enter Andersen Air Force Base, he asked the UC to check to see where his parents were. UC responded that they were eating out at the Dusit. AT99 stated "Ok well im here and hoping ur not some cop n shit."

AT99 asked "Where we doin it?" The UC responded "Your car?? Lol or my room?" The UC further stated that he could meet AT99 at Burger King. AT99 texted "Ur room might be safer" and then texted "But ok." The UC inquired "You at BK? I'll walk over." At 6:47 p.m. AT99 stated "Yea."

On or about 6:35 p.m., AF OSI Special Agents established surveillance at the meet location and observed a 2013 Ford F-150 drive around the parking lot of the former Burger King. The vehicle stopped and parked near the dormitory. A male, later identified to be RICHARD JAY AIS SOLANG exited the vehicle and walked towards the edge of the parking lot. On or about 6:49 p.m., AFOSI special agents approached and arrested SOLANG without incident.

SOLANG possessed a Samsung Galaxy S10 cellular phone on his person at the time of arrest. AFOSI special agents noted that the phone was turned off. Looking into the cabin of the 2013 Ford F-150, AFOSI special agents observed in plain view a Samsung Galaxy S22 Ultra cellular phone.

SOLANG was transported to the AFOSI Office for processing. During processing, AFOSI agents determined that SOLANG was a Master Sergeant with the United States Air Force Reserves

U.S. Sentencing Memorandum - 4

on Guam but was not on active-duty status. SOLANG also was a part-time employee at the AAFB Passenger Terminal. Although SOLANG had Base access, he was considered a civilian. HSI special agents were contacted by SA Holt to continue the investigation.

HSI Special Agents Erfel Matanguihan and Richard Flores responded about two hours after SOLANG's detention and in a videotaped interview obtained from SOLANG after a *Miranda* rights acknowledgement and waiver, he consented to search both cellphones, and consent to search the Ford F150.

SOLANG over the course of the interview made certain admissions consistent with the Signal texts/chats indicating his activity on Grindr and communication with an individual who he at some point found out was around 14 years old. SOLANG admitted to informing the juvenile that he had "hooked up" with another juvenile to gain the 14-year old's trust. SOLANG admitted his intent was to have oral sex with the 14-year-old.

## **PRESENTENCE INVESTIGATION REPORT**

The Government adopts the Final Presentence Investigation Report ("PSR") (ECF No. 43), filed on April 8, 2025.

## **II. SENTENCING CALCULATIONS**

The base offense level for Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), is twenty-eight (28). *See* U.S.S.G. § 2G1.3(a)(3).

That base offense is increased by an additional two (2) levels because of the specific offense characteristic of the Defendant using a computer or interactive computer service to persuade, induce or entice a minor to engage in prohibited sexual contact. *See* U.S.S.G. § 2G1.3(b)(3)(A).

A timely acceptance of responsibility results in a reduction of three (3) offense levels. *See* U.S.S.G. §§ 3E1.1(a) & (b). Defendant's adjusted guideline range is offense level twenty-seven

U.S. Sentencing Memorandum - 5

(27).

Defendant's Criminal History Category is I with 0 criminal history points. The calculated sentencing guideline range is between 70-87 months.

However, the calculated sentencing guideline range is below the criminal statute's mandatory minimum sentence of one hundred and twenty (120) months. As such that mandatory minimum sentence becomes the guideline sentence. *See* U.S.S.G § 5G1.1(b).

III. <u>**SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**</u>

In *United States v. Booker*, the Supreme Court excised the provisions that made the Guidelines mandatory, and thus "made the Guidelines effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). As modified, the Sentencing Reform Act now "requires a sentencing court to consider Guideline ranges, see 18 U.S.C. § 3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." *Id*. Further, "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 264; *see* 18 U.S.C. § 3553(a)(4) & (a)(5). "[The Sentencing Reform] Act nonetheless requires judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deference, [and] protect the public...." *Booker*, 543 U.S. at 260; *see* 18 U.S.C. § 3553(a)(2).

As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). It is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. *Rita v. United States*, 551 U.S. 338, 350 (2007).

But the Guidelines are not the only consideration. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then

U.S. Sentencing Memorandum - 6

consider all the § 3553(a) factors to determine whether they support the sentence requested by a party. *Gall*, 552 U.S. at 49–50.

[A district judge] may not presume that the guideline range is reasonable. *Gall,* 552 U.S. at 50. [The district judge] must make an individualized assessment based upon the facts presented and if [the judge] decides an outside-Guidelines sentence is warranted, [the judge] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.*

The Government addresses each of the Section 3553(a) factors as follows:

1. <u>Nature and circumstances of the offense and the history and characteristics of the defendant</u>:

Defendant was using the social media application Grindr to solicit sexual partners. The screen name utilized by the Defendant, AAFB Throater 99, made it abundantly clear the Defendant had a connection to Andersen Air Force Base and the Defendant's intent to perform fellatio on any sexual partner. Even after Defendant found out he was messaging a 13-year-old minor, he persisted in communicating with the minor and described explicitly the sexual activity he wanted to engage in. The Defendant sexually groomed the supposed minor by attempting to gain his trust by indicating he had recently had oral sex with a 15-year-old juvenile male in a restroom that he had met on Grindr. The Defendant knew his actions were wrong, admitting to the minor once he arrived at the former Burger King parking lot meet location, "Ok well im here and hoping ur not some cop n shit."

In mitigation, prior to this offense, Defendant had maintained employment as he worked for eleven years as a program coordinator and emergency response activity coordinator for the Government of Guam at the Mayors Council (ECF No. 43, ¶ 95) and simultaneously worked in Passenger Services with AAFB Passenger Terminal. (ECF No. 43, ¶ 96) Defendant also served in the U.S. Air Force Reserve for 17 years and has had two active deployments and has been awarded

U.S. Sentencing Memorandum - 7

several military decorations for his accomplishments. (ECF No. 43, ¶ 98-99) Beyond a misdemeanor arrest almost seven years ago, where the case was dismissed with prejudice, Defendant has no criminal history. (ECF No. 43, ¶ 58)

Nevertheless, even with a stable work history and a seemingly happy family life, Defendant had hidden urges, seemingly not totally acknowledged by the Defendant where he made a conscious decision to attempt to engage in fellatio with a minor and risk reputational damage, loss of employment, financial and emotional harm to his family, and criminal liability.

2. <u>Need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense</u>:

A sentence of 120 months should impress on the Defendant the seriousness of his offense and promote significant respect for the law. Most importantly it will impress on others that utilizing social media applications to prey on minors has significant consequences. This is especially important in a world where a high percentage of youth have an online social media presence even on supposedly adult social media applications like Grindr and regularly interact with unknown adults. The recommended term of imprisonment is sufficient, but not greater than necessary to reflect the seriousness of the Defendant's offense.

3. <u>Need for sentence imposed to afford adequate deterrence to criminal conduct</u>:

The 120-month minimum mandated sentence for attempted enticement of a minor is significant, substantially beyond the guideline calculation of 70 - 87 months for a person with no criminal history. It is hoped that the conviction and sentence will deter the Defendant from committing additional crimes of this nature, given the severity of the criminal penalty.

4. <u>Need for sentence imposed to protect the public from further crimes of the Defendant</u>:

The government expects that the proposed sentence will protect the public from further crimes committed by the Defendant while he is incarcerated.

U.S. Sentencing Memorandum - 8

5. <u>Need for sentence imposed to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in most effective manner:</u>

If available, Defendant should seek group and individual psychotherapy to continue to address his ongoing mental health issues like depression. If the depression is caused by more than his current life circumstance, Defendant may need medical treatment.

While the Defendant has had a successful work history, the government-related jobs he had prior to his arrest are unlikely to be available upon his release from Bureau of Prison custody. Defendant should avail himself of any educational courses that would advance or create employment opportunities after release from custody.

The Bureau of Prisons provides residential and nonresidential sex offender treatment programs at ten designated institutions. The Defendant can be assessed to determine whether treatment is necessary, and if necessary, what program level is appropriate. Treatment is ordinarily provided in the last three years of the sentence. The Defendant should request to be designated to one of those institutions or request a transfer to those institutions when he is eligible for treatment.

6. <u>The kinds of sentences available</u>:

The sentence range for this Class A felony, written into the criminal statute, 18 U.S.C. § 2422(b), calls for imprisonment of not less than 10 years or for life. The government is seeking the lowest sentence available in the sentence range.

7. <u>The kinds of sentence and the sentence range established under the Guidelines</u>:

The Guidelines call for at least a minimum 120-month term of imprisonment.

8. <u>Any pertinent policy statements issued by the Sentencing Commission</u>:

There are no pertinent policy statements in this case.

9. <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct:</u>

The proposed sentence is consistent with that applicable to similarly situated defendants

U.S. Sentencing Memorandum - 9

and will therefore not create disparities among defendants convicted of similar crimes.

10. <u>Need to provide restitution to any victims of the offense</u>:

Restitution is not at issue in this case.

## IV. **CONCLUSION**

For the foregoing reasons, the Defendant should be sentenced to the statutory mandatory minimum sentence of 120 months. The Government submits that such sentence is appropriate and reasonable given the applicable Guideline range and the factors set forth in 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED this 10th day of April, 2025.

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI

By: */s/ Devarup Rastogi*
DEVARUP RASTOGI
Assistant U.S. Attorney

U.S. Sentencing Memorandum - 10