**CABOT
MANTANONA LLP**
929 S. Marine Corps Dr., Ste. 200
Tamuning, Guam 96913
Telephone: (671) 646-2001
Facsimile: (671) 646-0777
Email: mail@cmlaw.us

*Attorney for Richard Jay Ais Solang*

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   vs.<br><br>RICHARD JAY AIS SOLANG,<br><br>       Defendant, | CRIMINAL CASE NO. 24-CR-00017<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW Defendant Richard Jay Ais Solang ("Mr. Solang" or "Defendant"), by and through his counsels, and hereby respectfully submits his Sentencing Memorandum. As stipulated in the Amended Plea Agreement, dated October 8, 2024, between the United States and Defendant, Defendant requests the Court that Defendant be imposed ten (10) years of imprisonment, five (5) years of supervised release, and other standard conditions, the Court deems proper and just.

**I. Statement of Facts**

On October 8, 2024, Defendant pled guilty to his Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) and 2. On May 9, 2024, Mr. Solang was arrested by a federal sting investigation, conducted an online undercover operation in order to identify and target adult individuals who were seeking to contact and engage in illegal sexual

activity with minor children. In eventually admitting his guilt and not resisting the law enforcement process, Mr. Solang cooperated with the United States and timely accepted his responsibility. As a result, Defendant entered into a plea agreement, wherein the United States recommended ten (10) years of imprisonment and five (5) years of supervised release. Additionally, Final Presentence Investigation Report, dated April 8, 2025, concurs with the United States.

## II. SENTENCING CALCULATIONS

The base offense level for the offence is twenty-eight (28). *See* U.S.S.G. § 2G1.3(a)(3). That level is increased by an additional two (2) levels, due to the offense's unique nature of using a computer or interactive computer service to persuade, induce or entice a minor to engage in prohibited sexual contact. *See Id.* § 2G1.3(b)(3)(A). Defendant's timely acceptance of responsibility reduced three (3) offense levels. *See Id.* § 3E1.1(a) & (b).

Additionally, Defendant's Criminal History Category is I with zero criminal history points because he has no prior criminal history. As such, Defendant's adjusted total offense level is twenty-seven (27). The calculated sentencing guideline range for that level is between seventy (70) to eighty-seven (87) months.

However, mandatory minimum sentences become the guideline sentence because that guideline range is below the statutory mandatory minimum sentence, one hundred twenty (120) months. *See Id.* § 5G1.1(b).

## III. PRESENTENCE INVESTIGATION REPORT

Defendant adopts the Final Presentence Investigation Report (ECF No. 43), dated April 8, 2025.

### IV. Sentencing Factors under 18 USC § 3553

While the court must correctly calculate the advisory guideline range, it may not treat that range as mandatory. The advisory guidelines range is merely one of several factors to be reviewed in imposing a sentence that is sufficient but not great than necessary to accomplish the goals of sentencing under 18 USC § 3553(a). *Kimbrough v. United States*, 522 U.S. 85, 90, 128 S.Ct. 558 (2007). The court must conduct an individualized assessment of the facts and an independent review of the § 3553(a) factors, which are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

    (7)  the need to provide restitution to any victims of the offense.

### i. Nature and circumstances of the offense and history and characteristics of Defendant

Mr. Solang pled guilty to a single count of Attempted Enticement of a Minor, on October 8, 2024. Mr. Solang admits on the facts contained in the Amended Plea Agreement.

Mr. Solang admits that he made a huge mistake in attempting to entice a minor. He understands the seriousness of the offense. Mr. Solang did not intend to target a minor when he began his multiple communications with the "straw" minor victim. Although he could not stop when the victim, the virtual figure, revealed that he was thirteen (13) years old, Mr. Solang would not have engaged in that type of communication with a minor, had he known at the beginning that he was a minor. It is true that Mr. Solang at one point mentioned that he had a similar incident with another minor; however, this was not true and a motion to lighten the situation.

During the pendency of this case, Mr. Solang has been compliant with court orders in Guam. He has demonstrated the ability to rehabilitate by following court orders and being violation-free in Guam. Additionally, Mr. Solang has no prior criminal history, other than the current offense. Although he was previously charged with DUI in Hawaii, that case is dismissed. This shows that Mr. Solang had an exemplary, law-abiding life.

Mr. Solang has a successful employment history with a good reputation. *See* Letter from Robert RDC Hofmann, dated October 7, 2024, attached hereto as Exhibit "A." He was previously employed with the Government of Guam at the Mayors Council to Guam

as a program Coordinator from 2013 to 2024. He oversaw operations of the twelve (12) senior citizen centers and four (4) adult day care centers in Guam. His public service also includes Emergency Response Activity Coordinator. Mr. Solang was also employed with the AAFB Passenger Terminal.

Mr. Solang enlisted with the United States Air Force Reserve on December 19, 2007. He was deployed to Afghanistan in 2010 for one (1) year and to Jordan in 2023 for six (6) months. His current rank is E-7 Master Sergeant, and his primary specialty is an air transportation specialist. Over the last seventeen (17) years, for his commitment in the military he has been awarded the following: Afghanistan Campaign Medal; Global War on Terrorism Expeditionary Medal; Air and Space Overseas Service Ribbon; Air and Space Expeditionary Service Ribbon; Armed Forces Reserve Medal; Air Force Training Ribbon; NATO Meda; USAF Non-Commissioned Officer Profession Military Education Graduate Ribbon.

Mr. Solang will have a family support during his time in prison and thereafter. Mr. Solang has a wife and daughters staying with and taking care of him. Additionally, his siblings have been providing him with a huge financial and mental support. Mr. Solang is currently mentally suffering from his responsibility. Since the onset of this incident, he has lost thirty (30) pounds and has not been sleeping well due to severe stress and depression. He is also experiencing memory loss and saw four (4) different doctors since his arrest for depression, one of whom was Dr. Butler at Blue Ocean Behavioral Health, who diagnosed him with Major Depressive Disorder, Suicidal Ideations, and Problems related to Other Legal Circumstances.

Defendant has no prior history of illicit or controlled substance abuse, such as marijuana, cocaine/crack, methamphetamine, heroin, ecstasy, and fentanyl. He drinks whiskey and wine occasionally. Although he was previously arrested for Driving under the Influence in Hawaii in 2010, that case was dismissed. Since then, Defendant does not have a track record relevant to such. Defendant was found to possess isobutyl nitrite, also known as poppers, at the time of arrest. However, Defendant has not shown any sign of isobutyl nitrite abuse.

Vulnerability to in-person victimization is also a factor inadequately accounted for by the advisory guidelines. Due to the nature of the current charge, Mr. Solang would be extremely vulnerable to abuse in the prison system. Although it is not the case here, a defendant's vulnerability to abuse by other inmates in prison may warrant a downward departure or variance. *See United States v. Lara*, 905 F.2d 599, 603 (2d Cir. 1990) (court acted within its discretion in departing downward based on defendant's personal characteristics that made him particularly vulnerable to in-prison victimization); *United States v. Parish*, 308 F.3d 1025 (9th Cir. 2002) (citing *Lara* and holding that a defendant's unusual susceptibility to abuse by other inmates may warrant a downward departure); *United States v. Brown*, CR 21-00018, at ECF 104, 105 (D. Guam 2024) (granting variance based on victimization in BOP); *United States v. Palaganas*, CR 13-00057, at ECF 47, 49 (D. Guam 2014) (granting variance based on the defendant's exposure to a very high risk of victimization while incarcerated due to his small physical stature, gender identification matter, timid demeanor, and the court's overall observation of defendant).

**ii. Need for the sentencing imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense**

Pursuant to 18 U.S.C. § 3553(a)(2), it is required that a federal sentence be imposed with an aim to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from future crimes of the defendant and rehabilitate the defendant.

One hundred twenty (120) months of imprisonment is already a sentence that can significantly impress on the seriousness of Mr. Solang's offense and promote significant respect for the law. This is more so, given Mr. Solang's age. He is forty-six (46) years old and will be approximately fifty-six (56) years old when released. Although the instant offense is serious crime, there was no real victim in this case. Throughout his case, Mr. Solang has already learned lessons and believes that the recommendation is sufficient.

Moreover, the seriousness of the offense should not be based on speculative fears that a defendant may have committed uncharged crimes in the past or will do so in the future. Mr. Solang has not been convicted of sexually abusing a child, has not in fact sexually abused a child, and is at risk of harming a child. *See United States v. Phinney*, 599 F.Supp. 2d 1037, 1045 n.10 (E.D. Wis. 2009) ("[C]ourts should not assume that a defendant has or will commit additional crimes without a reliable basis.").

For the rest of his life, Mr. Solang will suffer punishment through collateral consequences of his conviction. In fact, Mr. Solang is socially and economically suffering a felony conviction. The shame and stigma of being a sexual criminal has already begun not only to him but also to his family members. He will have to register as a sex offender, which will be publicly available to the family, friends, prospective employers and the community at large. Registration as a sex offender is relevant to the need for the sentence imposed to reflect just punishment. *See United States v. Garate*, 543 F.3d 1026, 1028

(8th Cir. 2008) (noting it was appropriate under § 3553(a) for the district court to consider the lasting effects of being required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474–75 (4th Cir. 2007) (affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," and consideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment and adequate deterrence); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (affirming below-guideline sentence based in part on court's findings that defendant suffered substantial mental and personal stress as a result of his prosecution, because the court's findings were directly relevant to the § 3553(a) analysis).

### iii. Need for sentence imposed to afford adequate deterrence to criminal conduct:

Research has demonstrated that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 CRIME & JUSTICE 1, 28–29 (2006). "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." *Id.* "The idea that increased penalties have sizeable marginal deterrent effects requires heroic and unrealistic assumptions about 'threat communication,' the process by which would-be offenders learn that penalty increases have been legislated or are being implemented." *Id.* Actually, increasing the severity of punishment does little to deter crime. Nat'l Institute of Justice, *Five Things About Deterrence*, May 2016. "Laws and policies designed to deter crime by focusing mainly on increasing the severity of punishment are ineffective partly because criminals know little

about the sanctions of specific crimes." *Id.* Prisons may have the opposite effect, such as inmates may learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment. *Id.*

Overly lengthy sentence will have no specific deterrent effect on Mr. Solang. Defendant already understands the severity of this type of crime, and recommended term of imprisonment is already a huge criminal penalty to him. Moreover, Defendant is forty-six (46) years old, which presents his low risk of recidivism. Defendant has no zero criminal history points; no prior criminal record; no prior history of sexual offenses; and no prior history involving sexual contact with minors. While being released, he has complied with court-ordered conditions. Additionally, he has pled guilty, demonstrated remorse, and has stayed arrest and violation free. There is no evidence that a sentence harsher than statutory minimum will deter future crime.

**iv. Need for sentence imposed to protect the public from further crimes of Defendant**

The recommended sentence will be sufficient to protect the public from further crimes.

**v. Need for sentence imposed to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in most effective manner**

Defendant wishes to participate in a sex offender treatment program. He is ready to be assessed to determine whether his treatment is necessary and what program level is appropriate. As this program is only available in certain institutions, Defendant request that the Court recommend his imprisonment at FCI Seagoville, Texas.

### vi. The kinds of sentences available

Mr. Solang is convicted of Class A felony, requiring the Court impose a no less than ten (10) years of imprisonment. Defendant jointly recommends the lowest sentence available to him.

### vii. The kinds of sentence and the sentence range established under the Guidelines

The Sentencing Guidelines call for minimum one hundred twenty (120) month of imprisonment.

### viii. Any pertinent policy statement issued by the Sentencing Commission

There are no pertinent policy statements in this case.

### ix. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

The court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristic that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004). Defendant is the last person who will be sentenced to this offense as a result of the sting investigation. All other persons, such as Josuel Sanchez Usana 24-CR-00020 and Ricky Junior O. Quichocho 24-CR-00022, were sentenced to ten (10) years of

imprisonment and five (5) years of supervised release. Imposing a higher criminal penalty than will create a sentence disparity.

### x. Need to provide restitution to any victims of the offense

Restitution is not an issue.

### xi. Plea Agreement and Final Presentence Investigation Report

In this case, the United States and Probation Office all jointly recommends ten (10) years of imprisonment and five (5) years of supervised released by Amended Plea Agreement, dated October 8, 2024, and Final Presentence Investigation Report, dated April 8, 2025. As stipulated in the Plea Agreement[1] and recommended in the Final Presentence Investigation Report, Defendant respectfully requests for ten (10) years of imprisonment and five (5) years of supervised release.

### IV. CONCLUSION

For the foregoing reasons, Defendant should be sentenced to the statutory minimum sentence of one hundred twenty (120) months. Defendant submits this Memorandum with belief that such sentence is appropriate, just, and reasonable given the applicable Guideline range and the factors set forth in 18 U.S.C. § 3553(a).

**RESPECTFULLY SUBMITTED** this 15th day of April, 2025.

        **CABOT MANTANONA LLP**
        Attorneys for Richard Jay Ais Solang

    By:   __/s/ Rawlen M.T. Mantanona_____
            **RAWLEN M.T. MANTANONA**

---

[1] "The United States and the Defendant agree to recommend that the Court impose a sentence 120 months, the statutory mandatory minimum sentence for the charge of Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b)." Amended Plea Agreement, p. 12 ln. 3–5 (Oct. 8, 2024).

# EXHIBIT "A"

October 7, 2024

The Honorable
Frances Tydingco-Gatewood
Chief Judge
District Court of Guam
U.S. Courthouse
520 W. Soledad Ave.
Hagatna, Guam 96910

Dear Hon. Judge Tydingco-Gatewood:

*Buenas yan Hafa Adai!* I am writing this letter as a private citizen and friend of Richard "Jay" Solang" whom I have known for more than 12+ years. When he informed me of what had happened, he asked for prayers for his family, for mercy, and for him so we've been praying for him here at St. Jude's. He's been on our prayer intentions for months.

I respectfully request leniency and compassion in the sentencing of Richard Solang, who will be appearing before you. I understand that the legal system must hold individuals accountable for their actions, but I urge you to consider the extraordinary circumstances of Mr. Solang's case.

Richard Solang is a first-time offender with no prior criminal history. His actions, while misguided and regrettable, were an isolated incident of very poor judgment. He has taken full responsibility for his mistakes and is willing to accept the consequences through a plea agreement. This demonstrates his remorse and commitment to making amends. Mr. Solang's transgression has already had severe repercussions on his personal life. He has brought deep shame and embarrassment to his family and his friends. His actions have caused them immense emotional pain and damaged their reputation within their community.

Despite his mistakes, Richard Solang is not defined solely by this incident. He is a wonderful program coordinator for the Senior Citizens Operations and the Mayors' Council of Guam Emergency Response Coordinator. He is a hardworking employee and team-member, he served our nation as a soldier, he is dedicated husband and father, and active in the Palauan community of Guam. He has the potential to learn from this experience and become an even better contributor to society.

I respectfully request that you consider a sentence that balances accountability with mercy. A harsh punishment may not be necessary to deter future wrongdoing, given Mr. Solang's demonstrated remorse and the collateral consequences he has already endured. Probation or a short term of incarceration, followed by supervised release, could provide the opportunity for him to reflect on his actions and make positive changes in his life and continue the hard work he's done for our Manamko and our emergency response coordination.

I really appreciate your time and consideration in reviewing Richard Solang's case. I pray and am confident that he will emerge from this experience a wiser and more responsible individual. Thank you and *Si Yu'us Ma'ase!*

*Senseramente,*

Robert RDC Hofmann